**THE SAULT STE. MARIE TRIBE OF CHIPPEWA INDIANS, Plaintiff–Appellant,**

v.

**UNITED STATES of America, United States Department of the Interior, Bruce Babbitt, in his official capacity as Secretary of the Interior, Defendants–Appellees,**

and

**Little Traverse Bay Bands of Odawa Indians, Intervenor Defendant– Appellee.**

No. 99–2444.

United States Court of Appeals, Sixth Circuit.

May 16, 2001.

Before NELSON and BATCHELDER, Circuit Judges; FEIKENS,* District Judge.

FEIKENS, District Judge.

In this case, the Sault Ste. Marie Tribe of Chippewa Indians (SSM) challenges the Department of Interior's (DOI) decision to accept into trust and allow Class III gaming (i.e. a casino) on property acquired by the Little Traverse Bay Bands of Odawa Indians (LTBB).  District Court Judge Robert Holmes Bell granted defendants'

* The Honorable John Feikens, United States District Judge for the Eastern District of

Michigan, sitting by designation.

motions for summary judgment and denied SSM's motion to enjoin DOI from taking the property into trust for the purpose of gaming. SSM appeals this decision.

The issue on which this appellate decision centers is whether the plaintiff, appellant here, has standing to bring this suit. That issue was not resolved in the district court. While that court did comment on the issue, it was not resolved, as it must be to determine whether there is Federal jurisdiction in this matter.

Since we must remand this case to the district court for that purpose, a brief recitation of the background facts is necessary.

## I. BACKGROUND

In the Little Traverse Bay Bands of Odawa Indians and the Little River Band of Ottawa Indians Act, (LTBB Act) (25 U.S.C. § 1300k et seq.) Congress, in pertinent part, made the following findings:

(1) The Little Traverse Bay Bands of Odawa Indians ... are descendants of, and political successors to, signatories of the 1836 Treaty of Washington and the 1855 Treaty of Detroit.

. . . .

(3) The Little Traverse Bay Bands of Odawa Indians consists of at least 1,000 eligible members who continue to reside close to their ancestral homeland as recognized in the Little Traverse Reservation in the 1836 Treaty of Washington and the 1855 Treaty of Detroit, which area is now known as Emmet and Charlevoix Counties, Michigan.

. . . .

(5) The Bands filed for reorganization of their existing tribal governments in 1935 under the Act of June 18, 1934 (25 U.S.C. 461 et seq.; commonly referred to as the "Indian Reorganization Act"). Federal agents who visited the Bands, including the Commissioner of Indian Affairs, John Collier, attested to the continued social and political existence of the Bands and concluded that the Bands were eligible for reorganization. Due to a lack of Federal appropriations to implement the provisions of such Act, the Bands were denied the opportunity to reorganize.

(6) In spite of such denial, the Bands continued their political and social existence with viable tribal governments. . . .

. . . .

(8) In 1975, the Northern Michigan Ottawa Association [formed in part by the LTBB] petitioned under the [Indian Reorganization Act] to form a government on behalf of the Bands. Again, in spite of the Bands' eligibility, the Bureau of Indian Affairs failed to act on their request.

(9) The United States Government, the government of the State of Michigan, and local governments have had continuous dealings with the recognized political leaders of the Bands from 1836 to the present. 25 U.S.C. § 1300k.

Before 1994, and the enactment of this legislation, the LTBB were not on the list of Federally recognized tribes. This Act included them in this list when Congress, in light of these findings, stated, "Federal recognition of the Little Traverse Bay Bands of Odawa Indians ... is hereby reaffirmed." 25 U.S.C. § 1300k–2(a).

Prior to this Act, members of the LTBB had been denied rights, services and benefits that were granted to Federally recognized Indian tribes. With this Act, Congress remedied this as well. "The Bands and their members shall be eligible for all services and benefits provided by the Federal Government to Indians because of their status as federally recognized Indians." 25 U.S.C. § 1300k–2(b)(1). "All

rights and privileges of the Bands, and their members thereof, which may have been abrogated or diminished before September 21, 1994 are hereby reaffirmed." 25 U.S.C. § 1300k–3(a).

Congress further enacted, in regard to land for the LTBB:

> For the purposes of the delivery of Federal services to the enrolled members of the Little Traverse Bay Bands of Odawa Indians, the area of the State of Michigan within 70 miles of the boundaries of the reservations for the Little Traverse Bay Bands as set out in Article I, paragraphs "third" and "fourth" of the Treaty of 1855, 11 Stat. 621, shall be deemed to be within or near a reservation....

25 U.S.C. § 1300k–2(b)(2)(A). Congress also directed the DOI in regard to LTBB land:

> The Secretary shall acquire real property in Emmet and Charlevoix Counties for the Benefit of the Little Traverse Bay bands. The Secretary shall also accept any real property located in those Counties for the benefit of the Little Traverse Bay Bands if conveyed or otherwise transferred to the Secretary....

25 U.S.C. § 1300k–4(a).

Following this enactment, the LTBB purchased an area of land located in Emmet County, Michigan. The property contained an old bowling alley which LTBB planned to renovate and turn into a casino. The LTBB had already entered into a gaming compact with the State of Michigan. The DOI made a final determination to take the property into trust on August 27, 1999:

> It has been determined that the transaction comes with an exception to the prohibition on gaming on after-acquired lands contained in Section 20 of the Indian Gaming Regulatory Act because the lands are taken into trust as part of the restoration of lands for an Indian tribe

(Little Traverse Bay Bands of Odawa Indians) that is restored to Federal recognition. In addition, it has been determined that the trust acquisition is mandated under the Little Traverse Bay Bands of Odawa Indians and the Little River Band of Ottawa Indians Act, 25 U.S.C. 1300k–1300k–7.

D. Op. at 2, quoting Memo from Assistant Secretary Kevin Gover to Area Director, August 27, 1999, J.A. at 757. *See also* Memo from Director, Indian Gaming Management Staff to Assistant Secretary, Kevin Gover, August 27, 1999, J.A. at 759.

The DOI published a notice of this final agency determination in the Federal Register on September 2, 1999, as required by 25 C.F.R. § 151.12(b). Under this provision, the public must have 30 days notice of the DOI's decision before the land is accepted into trust. SSM filed this action under the Administrative Procedures Act (APA) (5 U.S.C. § 701 et seq.) within those thirty days.

## II. PROCEEDINGS

SSM initially filed suit against the DOI in the United States District Court for the District of Columbia. LTBB intervened and the parties stipulated to transfer the case to the United States District Court for the Western District of Michigan. SSM raised two issues in its complaint. First, it challenged the DOI's determination that the DOI was mandated to accept the property into trust. Second, it challenged the DOI's determination that the LTBB property falls under the "restored lands" exception to the Indian Gaming Regulation Act's (IGRA) prohibition of gaming on lands acquired into trust by the DOI. *See* 25 U.S.C. § 2719. The motions heretofore referred were then filed.

Prior to reaching the merits on either count, Judge Bell referred to the issue of

standing, stating, "A party seeking to assert a claim for judicial review of administrative action under the APA must have standing to assert that claim in order to satisfy the actual case or controversy requirement of Article III, § 2 of the United States Constitution." D. Op. at 4, J.A. at 1041. In applying the requirements of standing to SSM, he stated, "Plaintiff has not articulated any legally protected interest which is affected by the taking of [p]roperty into trust. The only harm Plaintiff alleges is the negative economic impact that operation of LTBB's Victories casino will have on its own casinos. Plaintiff contends, nevertheless, that the decision to take the [p]roperty into trust and the decision to permit gaming on the [p]roperty, while technically two separate decisions, cannot be viewed independently for purposes of standing." D. Op. at 5, J.A. at 1042. The DOI challenged SSM's standing only in regard to the decision to take the land into trust while the LTBB challenged standing on both counts. Judge Bell did not make a finding whether or not SSM had standing on either count. He avoided this by stating, "Although standing is generally a threshold inquiry, in light of the Court's determination below that Defendants are in any event entitled to summary judgment on the merits of Plaintiff's claims, resolution of the standing issue would not affect the ultimate disposition of this case. Accordingly, for purposes of this opinion, the Court will assume that Plaintiff has standing to bring this action." D. Op. at 6, J.A. at 1043.

Judge Bell then held that the DOI's interpretation that the LTBB Act mandated the taking of land into trust was neither arbitrary nor capricious and that "it is an eminently reasonable interpretation of the

Act, and will not be set aside." D. Op. at 14, J.A. at 1050. He also held that the DOI's determination that the property qualifies for the "restored lands" exception to IGRA's prohibition on gaming was not arbitrary, capricious or in violation of the law and that it was "a reasonable construction [and] will not be set aside." [1] D. Op. at 21, J.A. at 1057.

## III.  ANALYSIS

The Supreme Court has ruled that federal courts should no longer follow the practice of assuming jurisdiction in order to proceed on the merits. *See Steel Company v. Citizens for a Better Environment,* 523 U.S. 83, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998). "We decline to endorse such an approach because it carries the courts beyond the bounds of authorized judicial action and thus offends fundamental principles of separation of powers." *Id.* at 94, 118 S.Ct. 1003. Referring to this practice as hypothetical jurisdiction Justice Scalia writes, "Hypothetical jurisdiction produces nothing more than a hypothetical judgment—which comes to the same thing as an advisory opinion, disapproved by this Court from the beginning." *Id.* at 101, 118 S.Ct. 1003.

A Federal court has no jurisdiction if the plaintiff has no standing. It is common understanding that "Article III, § 2 of the Constitution extends the 'judicial Power' of the United States only to 'Cases' and 'Controversies' ... mean[ing] cases and controversies of the sort traditionally amenable to, and resolved by, the judicial process." *Steel Company,* 523 U.S. at 102, 118 S.Ct. at 1016. Furthermore, "[s]tanding to sue is part of the common understanding of what it takes to make a justiciable case." *Id.* The device used by the district court,

---

1. Plaintiff-appellant appeals only the second ruling, that LTBB is a restored tribe and the property in question is restored lands.

in assuming jurisdiction and then deciding that the appellant's position was not tenable, must yield to the requirement that standing must first be determined.

Assuming jurisdiction for the purpose of proceeding on the merits is precisely what Judge Bell did. During oral argument appellant asserted that the judge had implied that there was standing in this case.[2] From the record this appears to be so. *See* Tr. at 46, J.A. at 1110. While Judge Bell did indicate in what direction he leaned, he did not resolve the issue of standing. There are three requirements for standing. First, the plaintiff must allege a concrete injury. Second, the injury must be caused by the conduct by the defendant. Third, there must be a likelihood that the alleged injury will be redressed by the requested relief. *See id.* at 103, 118 S.Ct. at 1010; *see also Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992). Judge Bell did not apply these three factors to *either* of SSM's claims.

## IV. CONCLUSION

If the decision on standing is resolved in favor of the appellant, the appellant may well face significant hurdles on the merits on appeal. However, any analysis on the merits must await a determination of appellant's standing; for if appellant has no standing we have no jurisdiction. Therefore, this case is REMANDED to the district court for a resolution of the issue of standing.

---

2. Appellant also asserted that the issue of standing was not raised in the district court. Whether or not standing was raised in the district court is irrelevant. *See Arizonans for Official English v. Arizona,* 520 U.S. 43, 73, 117 S.Ct. 1055, 1071–72, 137 L.Ed.2d 170 (1997) (Asserting a federal court is obligated to cure the defect of lack of jurisdiction whether or not the parties concede jurisdiction or raise an argument regarding it).