RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2002 FED App. 0152P (6th Cir.)
File Name: 02a0152p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

SAULT STE. MARIE TRIBE OF
CHIPPEWA INDIANS,
      *Plaintiff-Appellant,*

      *v.*

UNITED STATES OF AMERICA,
      *Defendant-Appellee,*

LITTLE TRAVERSE BAY
BANDS OF ODAWA INDIANS,
      *Intervenor*
      *Defendant-Appellee.*

No. 99-2444

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 99-00799—Robert Holmes Bell, Chief District Judge.

Argued: April 26, 2001

Decided and Filed: May 3, 2002

Before: NELSON and BATCHELDER, Circuit Judges;
FEIKENS, District Judge.[*]

_____

[*]The Honorable John Feikens, United States District Judge for the Eastern District of Michigan, sitting by designation.

1

_____

**COUNSEL**

**ARGUED:**    Kevin J. Moody, MILLER, CANFIELD, PADDOCK & STONE, Lansing, Michigan, for Appellant. Charles R. Gross, ASSISTANT UNITED STATES ATTORNEY, Grand Rapids, Michigan, James A. Bransky, Traverse City, Michigan, for Appellees. **ON BRIEF:** Kevin J. Moody, Louis B. Reinwasser, MILLER, CANFIELD, PADDOCK & STONE, Lansing, Michigan, for Appellant. Charles R. Gross, ASSISTANT UNITED STATES ATTORNEY, Grand Rapids, Michigan, James A. Bransky, Traverse City, Michigan, George Forman, FORMAN & PROCHASKA, San Rafael, California, for Appellees.

NELSON, J., delivered the opinion of the court, in which BATCHELDER, J., joined. FEIKENS, D. J. (pp. 12-14), delivered a separate dissenting opinion.

_____

**OPINION**

_____

DAVID A. NELSON, Circuit Judge. This is an Indian Gaming Regulatory Act case in which the plaintiff tribe, invoking the Administrative Procedure Act as a jurisdictional predicate for its suit, seeks judicial review of Interior Department determinations that allowed the intervenor Indian bands to operate a gambling casino in Northern Michigan. There is a threshold question as to whether the plaintiff has standing to sue.

In summary judgment proceedings that straddled a remand from this court, the district court determined (a) that the defendants were entitled to summary judgment on the merits of the case and (b) that the plaintiff was entitled to prevail on the issue of standing. Upon review, we conclude that judgment ought to have been rendered against the plaintiff on

In his initial opinion of December 17, 1999, Judge Bell made a thorough analysis of both these issues. He conducted a complete study of LTBB's history and DOI's decision-making process.     He found that "The Secretary's determination that LTBB is a restored tribe for purposes of IGRA §2719(b)(1)(B)(iii) is not arbitrary or capricious, or in violation of the law.  Because the Secretary has given this provision a reasonable construction, it will not be set aside."

I see no need to recreate Judge Bell's analysis here because I find that his reasoning is sound.   Therefore, I would AFFIRM Judge Bell's grant of summary judgment to defendants.

the latter issue.  We shall therefore vacate the judgment entered by the district court and remand the case with instructions to dismiss for want of jurisdiction.

I

The plaintiff, Sault Ste. Marie Tribe of Chippewa Indians, is a federally recognized Indian tribe that operates casinos on Indian lands[1] in Michigan.  One of the Sault Tribe's casinos is located in St. Ignace, Michigan, on the northern verge of the Straits of Mackinac.

The intervenor defendant, Little Traverse Bay Bands of Odawa Indians, is a consortium of Indian bands that apparently has been restored to federal recognition.[2]  The State of Michigan has entered into a compact with the Little Traverse Bands to permit Little Traverse to own and operate a casino on eligible Indian lands in Emmet or Charlevoix Counties, Michigan.

In June of 1999 Little Traverse acquired five acres of land in or near Petoskey, Emmet County, Michigan, with a view to establishing a casino there.  Petoskey, a Rand McNally highway map discloses, is located about 40 miles southwest of St. Ignace and about 19 miles west of the closest

---

[1] Section 4 of the Indian Gaming Regulatory Act, 25 U.S.C. §§ 2701 *et seq.*, defines the term "Indian lands" as meaning

"(A) all lands within the limits of any Indian reservation; and

 (B) any lands title to which is either held in trust by the United States for the benefit of any Indian tribe or individual or held by any Indian tribe or individual subject to restriction by the United States against alienation and over which an Indian tribe exercises governmental power."  25 U.S.C. § 2703(4).

[2] See 25 U.S.C. § 1300k-2(a), which provides in part that "[f]ederal recognition of the Little Traverse Bay Bands of Odawa Indians and the Little River Band of Ottawa Indians is hereby reaffirmed."

interchange on Interstate Highway 75. I-75 is the major north-south highway connecting the Straits of Mackinac with large population centers in the southern part of Michigan.

In July of 1999, after asking the United States Department of the Interior to approve gaming at Petoskey and requesting that the site be taken into trust by the United States for the benefit of the Little Traverse Bay Bands, Little Traverse began using the site for class III gaming operations.[3] These gaming operations continued for about six weeks, at which point they were temporarily halted by a federal court injunction.

The Interior Department subsequently granted Little Traverse's requests, determining both that the Petoskey site would be taken into trust and that Little Traverse could conduct gaming operations there. The casino was reopened in January of 2000 and has been operating ever since, as we understand it.

Meanwhile, the Sault Tribe commenced the present action in the United States District Court for the District of Columbia. The case was transferred in October of 1999 to the United States District Court for the Western District of Michigan. There the Sault Tribe moved for summary judgment on the ground, among others, that the Interior Department had neglected to follow its own regulations before making a final decision to take the Petoskey site into trust. Little Traverse was allowed to intervene as a party defendant, whereupon it filed a pleading styled "Motion to Dismiss or for Summary Judgment in Favor of Defendants."

---

[3] In 25 U.S.C. § 2703(8), "class III gaming" is defined as meaning "all forms of gaming that are not class I gaming or class II gaming." The term "class I gaming" includes social games with prizes of minimum value, see 25 U.S.C. § 2703(6), and the term "class II gaming" includes bingo and certain card games, see 25 U.S.C. § 2703(7)(A) and (B).

Data Systems, Inc., had previously agreed or negotiated to perform such services.

*Id*. at 152.

Using common sense, as I read plaintiff's allegations, I also conclude that plaintiff has shown that it has sustained and/or will sustain a negative economic effect; that is, it is a competitor of Little Traverse Bay Bands of Odawa Indians; that it is located within forty miles of that tribe; and that it draws (customers) gamblers from the same locale. It is clear that the Victories Casino in Petoskey would hurt the plaintiff's business. To require more, *i.e.*, a heightened standard of pleading and an affidavit to support that pleading, which proof the majority asserts may be readily available, is to exalt form over substance. It seems to me that we should give deference to the district judge in his holding and not require what is obvious.

This case, and its appeal, is based upon the interpretation and application of the Indian Gaming Regulation Act (IGRA). Under IGRA, gaming on lands acquired in trust by the Secretary of the [Department of the] Interior (DOI) is prohibited except when the lands are taken into trust as part of the restoration of lands for an Indian tribe that is restored to federal recognition. *See* 25 U.S.C. 2719(b)(1)(B)(iii). The Sault Ste. Marie Tribe argues that the Little Traverse Bay Bands of Odawa Indians (LTBB) is not a restored tribe under the Act and that the determination by DOI that LTBB is a restored tribe should not be accorded deference. Sault Ste. Marie further contends that this decision was in violation of the law under the Administrative Procedures Act (APA). There are two issues central to this appeal: first, whether DOI's determination of LTBB's eligibility to conduct gaming is reasonable under the *Chevron* doctrine and, second, whether DOI's determination of LTBB's eligibility to conduct gaming is in violation of the APA.

———————————

**DISSENT**

———————————

FEIKENS, JOHN, dissenting.  I agree with the result reached by the court but, with due respect, I write separately to state that I would affirm the Order On Standing entered by Chief Judge Robert Holmes Bell on November 6, 2001.

In his opinion, which sets out reasons for concluding that plaintiff Sault Ste. Marie Tribe of Chippewa Indians had standing, Judge Bell stated that competitors have standing to challenge decisions made by administrative agencies that affect competition.  He cites Supreme Court cases in support of this conclusion (*see* p.6 of his November 6, 2001 Opinion).[1]

I note particularly his cite to *Association of Data Processing Service Organizations, Inc., et al. v. Camp, Comptroller of the Currency*, 307 U.S. 150, 157 (1970).  In that case the Supreme Court found that the plaintiff had satisfied the injury-in-fact requirement by alleging the possibility of future loss due to competition.  The Court said:

> The first question is whether the plaintiff alleges that the challenged action has caused him injury in fact, economic or otherwise.  There can be no doubt but that petitioners have satisfied this test.  The petitioners not only allege that competition by national banks in the business of providing data processing services might entail some future loss of profits for the petitioners, they also allege that respondent American National Bank & Trust Company was performing or preparing to perform such services for two customers for whom petitioner

———————————

[1] *National Credit Union Administration v. First National Bank,* 522 U.S. 479, 488 (1998); *Arnold Tours, Inc. v. Camp,* 400 U.S. 45 (1970).

In the summary judgment branch of its motion, Little Traverse maintained, among other things, that "Plaintiff lacks standing to challenge the Department of the Interior's alleged failure to comply with the notice and comment requirements of 25 C.F.R. § 151.10 before accepting the site of the [Petoskey] Casino into trust for [Little Traverse] because Plaintiff has no right under that regulation to receive notice or submit comments . . . ."  The thrust of Little Traverse's argument was that the Sault Tribe had not suffered an invasion of a legally protected interest and had no interest that came within the zone of interests sought to be protected by the statute and regulations. The United States likewise moved for summary judgment and challenged the Sault Tribe's standing with respect to the Interior Department's decision to take the Petoskey site into trust.

In December of 1999 the district court entered an opinion and order (a) pretermitting the issue of standing, (b) denying the Sault Tribe's summary judgment motion, (c) granting summary judgment to the United States and Little Traverse on the merits of the dispute, and (d) dismissing the action.  See *Sault Ste. Marie Tribe of Chippewa Indians v. United States*, 78 F.Supp.2d 699 (W.D. Mich. 1999).

A timely appeal to our court followed.  In its appellate brief and at oral argument, Little Traverse contended – as it had not below – that the Sault Tribe lacked standing to sue because the operation of a casino at Petoskey would cause no "injury in fact."[4]  Concluding that the Supreme Court's opinion in *Steel Co. v. Citizens for a Better Environment*, 523

———————————

[4] The first wave of papers filed by Little Traverse in the district court included an affidavit from another case in which the affiant, Little Traverse employee James Rider, expressed the opinion that the operation of a casino in or near Petoskey "should not have a significant adverse impact on the profits of a well-managed casino at either St. Ignace or Brimley, Michigan . . . ."  Although the Rider affidavit would appear to support a claim that there was no injury in fact, neither the summary judgment motion nor the brief accompanying it asserted such a claim.

U.S. 83 (1998), left us no alternative, we remanded the case to the district court for resolution of the question whether the Sault Tribe has standing to bring this suit. See *Sault Ste. Marie Tribe of Chippewa Indians v. United States*, 9 Fed. Appx. 457, 2001 W.L. 549409 (6th Cir. 2001) (unpublished).

On remand, the district court entered an opinion and order resolving the issue of standing in favor of the plaintiff tribe. The order did not alter the summary judgment previously entered on the merits of the case, and the appeal of that judgment is still pending before us.

## II

The "standing-to-sue" requirement has two facets that are relevant here. Under one facet a party which, like the Sault Tribe, seeks to obtain judicial review of agency action pursuant to § 10(a) of the Administrative Procedure Act, 5 U.S.C. § 702, must be able to demonstrate what the Supreme Court calls "prudential standing." This means that the interest sought to be protected must "arguably" be within the "zone of interests" protected or regulated by the statute in question. Under the other facet of the requirement, there must be "Article III standing" – which means that there must be one of the "Cases" or "Controversies" spoken of in Article III, Section 2 of the Constitution. It is axiomatic that there cannot be a case or controversy, in the constitutional sense, without an "injury in fact." See generally *National Credit Union Administration v. First National Bank & Trust Co.*, 522 U.S. 479, 485-88 (1998).

In the matter before us now the Sault Tribe asserts that it will be adversely affected by competition from a casino located 40 miles away from the St. Ignace casino. The district court held that the commercial interests of potentially competing tribes were "arguably within the zone of interests" protected by the Indian Gaming Regulatory Act, and the court thus concluded that the Sault Tribe met the criteria for prudential standing.

To read the foregoing passage as contradicting everything the Supreme Court painstakingly explained in *Lujan* is, if we may say so, something of a stretch.[6]

For the reasons stated, the summary judgment entered by the district court is **VACATED**, and the case is **REMANDED** with instructions to dismiss for want of jurisdiction.

---

[6]Nor do we read *Ass'n of Data Processing Serv. Orgs., Inc. v. Camp*, 397 U.S. 150 (1970) – a decision handed down 22 years before *Lujan* – as suggesting that *Lujan* should be read as meaning something other than what it says. It is true, as our dissenting colleague notes, that the Court said this in the *Data Processing* case:

"The first question is whether the plaintiff *alleges* that the challenged action has caused him injury in fact, economic or otherwise." *Id.* at 152 (emphasis supplied).

But the defendants in that case, unlike the defendants in the case at bar, had not moved for summary judgment; the *Data Processing* matter "[came] before the court on motions by both defendants for an order of dismissal . . . ." *Ass'n of Data Processing Serv. Orgs., Inc. v. Camp*, 279 F.Supp. 675, 676 (D.Minn. 1968). Mere allegations of injury may suffice to defeat a motion for dismissal under Rule 12(b)(1), see *Lujan*, 504 U.S. at 561, but when a plaintiff is put to his proof by a Rule 56 motion for summary judgment, allegations alone are not enough. See Rule 56(e), Fed. R. Civ. P. ("When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations . . . of the . . . pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial").

Rule 56 does not require a heightened standard of pleading, to be sure. What Rule 56 does require, however, is affidavits, deposition transcripts, interrogatory answers, admissions by the adverse party, or other evidence setting forth specific facts. And in the case at hand, it seems to us, the record lacks the requisite evidence of specific facts from which the existence of competitive injury could reasonably be inferred.

because the evidence simply was not there; James Rider, at least, was of the view that the operation of the casino at Petoskey "should not have a significant adverse impact on the profits of a well-managed casino" at St. Ignace. See n. 4, *supra*. The district court presumably had no independent expertise on gambling markets in northern Michigan, in any event, and the court could hardly be expected to render judgment on such matters on the strength of unsupported speculation in a lawyer's brief.

But the absence of evidentiary support for the claim of competitive injury is beside the point, according to the Sault Tribe, because, the Tribe contends, a mere allegation of injury is all that is required. The Tribe's brief expressed itself on this point as follows:

"[Little Traverse's] assertions that the Sault Tribe has not submitted a 'shred' of evidence to support its claim of injury misses the point. [Footnote omitted.] *The Sault Tribe does not have to prove its damages case to have standing.* All that is required is an allegation that it has been injured, and that the injury was caused by the defendant." (Emphasis in original.)

The authority cited by the Sault Tribe in support of this proposition was the very decision in which we sent this case back to the district court. *Sault Ste. Marie Tribe*, 9 Fed.Appx. at 461. There, citing both *Steel Company*, 523 U.S. at 103, and *Lujan*, 504 U.S. at 560, we said this:

"There are three requirements for standing. First, the plaintiff must allege a concrete injury. Second, the injury must be caused by the conduct [of] the defendant. Third, there must be a likelihood that the alleged injury will be redressed by the requested relief."

Supreme Court caselaw provides considerable support for the conclusion that the "zone of interests" concept is sufficiently broad to embrace the interests of an actual or potential competitor. See *National Credit Union*, 522 U.S. at 488-92 (discussing cases). In *Sokaogon Chippewa Community v. Babbitt*, 214 F.3d 941, 947 (7th Cir. 2000), on the other hand, the Seventh Circuit observed that "it is hard to find anything in [the Indian Gaming Regulatory Act] that suggests an affirmative right for nearby tribes to be free from economic competition." Be that as it may, we shall assume, for purposes of analysis, that the Sault Tribe meets the "zone of interests" requirement.

As to Article III standing, Supreme Court caselaw has established three elements as "the irreduceable constitutional minimum of standing . . . ." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). The elements are these:

"First, the plaintiff must have suffered an 'injury in fact' – an invasion of a legally-protected interest which is (a) concrete and particularized, and (b) 'actual or immanent, not "conjectural" or "hypothetical."'" Second, there must be a causal connection between the injury and the conduct complained of – the injury has to be 'fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court.' Third, it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" *Id.* at 560-61 (citations omitted).

The Supreme Court reaffirmed this formulation in the recent case of *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 180-81 (2000).

The elements of Article III standing are not simply pleading requirements. *Lujan,* 504 U.S. at 561. "[E]ach element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner

and degree of evidence required at the successive stages of the litigation." *Id*.; see 13A Wright, Miller & Cooper, Federal Practice and Procedure § 3531.15 n. 15 (2001 Supp.).

At the summary judgment stage, of course, a party seeking judgment can put the opposing party to its proof merely by "pointing out to the district court [] that there is an  absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  Although Little Traverse raised the issue of prudential standing, it does not seem initially to have raised the issue of Article III standing. Little Traverse's motion and brief did not point out to the district court that there was an absence of evidence showing an injury in fact.

When the matter came before this court on appeal, however, the alleged absence of any injury in fact was repeatedly and forcefully brought to the attention of court and counsel.  See, for example, Little Traverse's appellate brief at 18:  "At no point in this litigation . . . has [the Sault Tribe] ever presented a shred of evidence that it has suffered or is likely to suffer any negative impact whatsoever, economic or otherwise, by reason of [Little Traverse's] operation of the . . . casino just outside of Petoskey."[5]

Normally, an issue not raised below may not be raised on appeal. *In re Morris*, 260 F.3d 654, 663 (6th Cir. 2001).  An alleged absence of jurisdiction may be raised at any time, however, see *Franzel v. Kerr Mfg. Co.*, 959 F.2d 628, 630

---

[5]In the brief it filed in the district court on remand, Little Traverse reiterated, *in haec verba,* that "at no point in this litigation . . . has [the Sault Tribe] ever presented a shred of evidence that it has suffered or is likely to suffer any negative impact whatsoever, economic or otherwise, by reason of [Little Traverse's] operation of the . . . casino just outside of Petoskey . . . ."  The United States, in its brief on remand, agreed: "plaintiff has presented no tangible evidence of any – much less substantial – competitive injury . . . ."

(6th Cir. 1992), Fed. R. Civ. P. 12(h)(3), and this explains our remand.

When the matter was once again before the district court, it was incumbent on the Sault Tribe to show, if it could, that the operation of the casino at Petoskey was having an adverse effect on business at the Sault Tribe's casino at St. Ignace. The Tribe made no such showing.

In lieu of affidavits or similar evidence supporting its claim of competitive injury, the Sault Tribe invited the district court to take judicial notice, in effect, of the undisputed fact that its casino at St. Ignace is only 40 miles away from Little Traverse's casino at Petoskey.  Fair enough.  But the Tribe's post-remand brief then went on to assert the following, without reference to any supporting affidavits:

> "Both the Petoskey casino and the Sault Tribe's casino in St. Ignace share the same market, primarily composed of tourists who travel to northern Michigan.  Most of these tourists come 'north' from the lower half of the state.  It is reasonable to believe that some of these tourists stopping in Petoskey might drive the extra 40 miles to St. Ignace to game if there were no casino in Petoskey.  The loss of this business clearly injures the Sault Tribe."

The suggestion that the St. Ignace casino has lost business to the Petoskey casino may be true, for all we know, but it is hardly a fact of which the district court could properly take judicial notice.  It is one thing for the court to read a road map.  It is quite another thing for the court to infer that "some of [the] tourists stopping in Petoskey might drive the extra 40 miles to St. Ignace to game if there were no casino in Petoskey."

If the operation of the Petoskey casino had in fact been draining trade from St. Ignace, it should not have been beyond the Sault Tribe's capability to present facts and figures demonstrating and quantifying the diversion of business. Perhaps the Sault Tribe failed to make such a presentation