**CENTER FOR BIOLOGICAL DIVERSITY, Plaintiff,**

v.

**Robert B. PIRIE, Jr., Acting Secretary of the Navy; Donald H. Rumsfeld, Secretary of Defense, Defendants.**

No. CIV.A. 00–3044(EGS).

United States District Court, District of Columbia.

May 1, 2002.

Howard Irving Fox, Earth Justice Legal Defense Fund, Washington, DC, Paul H.

Achitoff, Earthjustice Legal Defense Fund, Honolulu, HI, for Plaintiff.

Mark L. Stermitz, U.S. Department of Justice, Environment & Natural Resources Division, Washington, DC, for Defendants.

Roger Michael Golden, Fenwick & West, L.L.P., Washington, DC, for Amicus.

Paul Douglas Kamenar, Washington Legal Foundation, Washington, DC, for Movant.

## MEMORANDUM OPINION AND ORDER

SULLIVAN, District Judge.

Plaintiff Center for Biological Diversity (CBD) filed this lawsuit to prevent the use by the United States military of live fire training exercises on the island of Farallon de Medinilla (FDM) because such exercises kill and otherwise harm several species of migratory birds without a permit, in violation of the Migratory Bird Treaty Act (MBTA), 16 U.S.C. § 703 *et seq.*, and the Administrative Procedures Act (APA), 5 U.S.C. § 701 *et seq.* Defendants, the Secretary of Defense Donald Rumsfeld and the acting Secretary of the Navy, Robert Pirie, have been sued in their official capacity as the heads of the branches of the military that engage in these exercises on FDM.

On March 13, 2002, this Court granted summary judgment in favor of plaintiffs, holding that defendants' activities on FDM violate both the MBTA and the APA. The Court then ordered briefing on the issue of remedy and scheduled a hearing for April 30, 2002. The issue now before the Court is whether Congress has expressly limited this Court's traditional equitable discretion so as to require an injunction to issue here, and if not, whether this Court should exercise its discretion to enjoin defendants' activities.

■ Upon consideration of the parties' submissions on the issue of remedy, the oral argument of counsel, and the applicable statutory and case law, this Court holds that while it retains equitable discretion under the APA, that discretion is limited to choosing among appropriate means of ensuring compliance with the statutes being violated here. The United States asks this Court to go beyond the scope of this Court's discretion and allow it to continue violating these statutes with impunity. This Court has no authority to read into a criminal statute such as the MBTA an exception for national security or military activities where none exists. *See United States v. Oakland Cannabis Buyers' Cooperative,* 532 U.S. 483, 498–99, 121 S.Ct. 1711, 149 L.Ed.2d 722 (2001).

## DISCUSSION

■ While the distinction between law and equity courts has long since been eliminated in our system of justice, traces of that distinction remain. Courts generally retain some amount of discretion over the creation and implementation of equitable relief. The Supreme Court has repeatedly held that the basis for injunctive relief in the federal courts has always been irreparable injury and the inadequacy of legal remedies. *Rondeau v. Mosinee Paper Corp.,* 422 U.S. 49, 61, 95 S.Ct. 2069, 45 L.Ed.2d 12 (1975); *Sampson v. Murray,* 415 U.S. 61, 88, 94 S.Ct. 937, 39 L.Ed.2d 166 (1974); *Beacon Theatres, Inc. v. Westover,* 359 U.S. 500, 506–507, 79 S.Ct. 948, 3 L.Ed.2d 988 (1959). Generally when a plaintiff can prove a violation of law, there is "no separate need to show irreparable injury," as irreparable injury is "merely one possible basis for showing the inadequacy of the legal remedy." *National Mining Association v. U.S. Army Corps of*

*Engineers,* 145 F.3d 1399, 1409 (D.C.Cir. 1998).

 However, when plaintiff and defendant present "competing claims of injury, the traditional function of equity has been to arrive at a 'nice adjustment and reconciliation' between the competing claims.'" *Weinberger v. Romero–Barcelo,* 456 U.S. 305, 312, 102 S.Ct. 1798, 72 L.Ed.2d 91 (1982) (*quoting Hecht Co. v. Bowles,* 321 U.S. 321, 329, 64 S.Ct. 587, 88 L.Ed. 754 (1944)). If such competing claims are presented, the court generally "balances the conveniences of the parties and possible injuries to them accordingly as they may be affected by the granting or withholding of the injunction." *Yakus v. United States,* 321 U.S. 414, 440, 64 S.Ct. 660, 88 L.Ed. 834 (1944). "The essence of equity jurisdiction has been the power of the Chancellor to do equity and to mould each decree to the necessities of the particular case. Flexibility rather than rigidity has distinguished it." *Hecht Co.,* 321 U.S. at 329, 64 S.Ct. 587.

 These general equitable principles reflect a hundred years of jurisprudence and Congress is presumed to legislate against this background. *See, e.g., Weinberger,* 456 U.S. at 312, 102 S.Ct. 1798. However, Congress is not without the ability to restrict federal courts' traditional equitable role. Congress may "intervene and guide or control the exercise of the courts' discretion, but we do not lightly assume that Congress has intended to depart from established principles." *Id.* In *Porter v. Warner Holding Co.,* the Supreme Court explained:

> Moreover, the comprehensiveness of this equitable jurisdiction is not to be denied or limited in the absence of a clear and valid legislative command. Unless a statute in so many words, or by a necessary and inescapable inference, restricts the court's jurisdiction in equity, the full

scope of that jurisdiction is to be recognized and applied. 'The great principles of equity, securing complete justice, should not be yielded to light inferences, or doubtful construction.' *Brown v. Swann,* 35 U.S. 497, 10 Pet. 497, 503 [9 L.Ed. 508] (1900) . .

328 U.S. 395, 398, 66 S.Ct. 1086, 90 L.Ed. 1332 (1946); *see also Weinberger,* 456 U.S. at 312, 102 S.Ct. 1798; *Tennessee Valley Authority v. Hill,* 437 U.S. 153, 98 S.Ct. 2279, 57 L.Ed.2d 117 (1978) ("*TVA* "). A trial court's discretion "is displaced only by a clear and valid legislative command." *United States v. Oakland Cannabis Buyers' Cooperative,* 532 U.S. 483, 496, 121 S.Ct. 1711, 149 L.Ed.2d 722 (2001) (citations omitted).

## I. Has Congress Limited This Court's Traditional Equitable Discretion?

### A. *Which law to consider?*

 The threshold question facing this Court is what statute to consider in determining whether Congress has limited this Court's traditional equitable discretion. This Court held on March 13, 2002, that defendants were violating the APA's prohibition on agency action otherwise in violation of the law, 5 U.S.C. § 706, by failing to comply with the MBTA's prohibition on killing migratory birds without a permit, 16 U.S.C. § 703. Plaintiff argues that this Court should consider the language of both § 706 of the APA and § 703 of the MBTA because "both are applicable to this case." Plf's Supp. Mem. of 3/27/02 at 8. Defendants argue that only the APA should be evaluated because the injunctive relief requested by plaintiffs is only authorized by the APA.

Defendants are correct that this Court's inquiry should focus on whether Congress intended for the APA to limit this Court's equitable discretion so as to require that

injunctions must issue. Every case discussing whether a court's discretion has been limited has discussed the intent of Congress with respect to the statute under which the injunction is available. *See, e.g. Oakland Cannabis*, 532 U.S. at 496, 121 S.Ct. 1711 (Controlled Substances Act); *Weinberger*, 456 U.S. at 312, 102 S.Ct. 1798 (Federal Water Pollution Control Act); *TVA*, 437 U.S. at 174, 98 S.Ct. 2279 (Endangered Species Act).

Here, no private right of action or injunctive relief is available for a violation of the MBTA. Plaintiff's right to sue is provided only by § 702 of the APA, as is the right to request injunctive relief. Section 702 of the APA states:

> *A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof.* An action in a court of the United States *seeking relief other than money damages* and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party. The United States may be named as a defendant in any such action, and a judgment or decree may be entered against the United States: Provided, That *any mandatory or injunctive decree* shall specify the Federal officer or officers (by name or by title), and their successors in office, personally responsible for compliance. Nothing herein (1) affects other limitations on judicial review or the power or

duty of the court to dismiss any action or deny relief on any other appropriate legal or equitable ground; or (2) confers authority to grant relief if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought.

5 U.S.C. § 702 (emphasis added). The fact that liability under § 706 of the APA is made contingent on the violation of another law, the MBTA, is irrelevant to the question of whether Congress intended to limit the courts' discretion when it created a provision allowing for injunctive relief under the APA. This Court's inquiry therefore should focus on the language, history, and purpose of the APA.

None of the cases cited by plaintiffs compels a different conclusion. In *Forest Guardians v. Babbitt*, 174 F.3d 1178 (10th Cir.1999), plaintiffs sued under the APA to enforce requirements of the Endangered Species Act (ESA). The Court held that defendants were violating the ESA, and then turned to the issue of whether an injunction must issue. The Court analyzed only the language and history of the APA to answer this question: "having determined that the Secretary violated his nondiscretionary duty to issue a critical habitat designation for the Rio Grande silvery minnow, we now look to the APA to determine the proper remedy to be prescribed upon judicial review." 174 F.3d at 1186–87.[1]

### B. *Language and Purpose of the APA*

■ The Supreme Court's decisions in *TVA*, *Weinberger*, and *Oakland Cannabis Buyers* make clear that in deciding the scope of a federal court's equitable jurisdiction with respect to violations of federal

---

**1.** As will be discussed below, insofar as the Tenth Circuit considered only the language of § 706 of the APA rather than § 702, this Court disagrees with the conclusion reached by that Court as to whether Congress limited the courts' equitable discretion under the APA.

statutes, a court can not conclude that an injunction *must* issue solely based on the fact of the statutory violation itself. 532 U.S. at 496, 121 S.Ct. 1711; 437 U.S. at 174, 98 S.Ct. 2279; 456 U.S. at 312, 102 S.Ct. 1798. Rather, a court must inquire into the *language and purpose* of the statute at issue in order to assess whether Congress has clearly limited the usual range of equitable options available to a court so as to constrain the court's discretion. 532 U.S. at 496, 121 S.Ct. 1711 (examining language of Controlled Substances Act); 456 U.S. at 314–319, 102 S.Ct. 1798 (examining language and purpose of the FWPCA); *TVA*, 437 U.S. at 174, 98 S.Ct. 2279 (examining "language, history, and structure" of ESA).

■ Two provisions of the APA, § 702 and § 706, are relevant to this Court's inquiry. As discussed above, § 702 is the provision creating the right to sue the United States and waiving the United States' sovereign immunity in non-damages actions. Section 706 is entitled "scope of review" and provides the substantive prohibitions on agency action violated here:

The reviewing court shall-

(1) compel agency action unlawfully withheld or unreasonably delayed; and

(2) hold unlawful and set aside agency action, findings, and conclusions found to be-

(A) arbitrary, capricious, and abuse of discretion, or otherwise not in accordance with law;

5 U.S.C. § 706.

Despite language in the substantive provisions of the Act written in mandatory terms, Congress in § 702 made its intent clear that courts shall retain equitable discretion. Section 706 does use mandatory terms: "shall ... unlawful and set aside." *Id.* The Supreme Court has stated that by using "shall" in a civil forfeiture statute, "Congress could not have chosen stronger words to express its intent that forfeiture be mandatory in cases where the statute applied." *United States v. Monsanto*, 491 U.S. 600, 607, 109 S.Ct. 2657, 105 L.Ed.2d 512 (1989); *see also Pierce v. Underwood*, 487 U.S. 552, 569–70, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988) (Congress' use of "shall" in a housing subsidy statute constitutes "mandatory language."); *Barrentine v. Arkansas–Best Freight Sys. Inc.*, 450 U.S. 728, 739 n. 15, 101 S.Ct. 1437, 67 L.Ed.2d 641 (1981); Black's Law Dictionary 1233 (5th ed. 1979) ("As used in statutes ... [shall] is generally imperative or mandatory."). In considering whether § 706 mandates that the Court compel agency action unlawfully withheld or unreasonably delayed, the Tenth Circuit in *Forest Guardians* held that "shall means shall" and that "Congress has stated unequivocally" that injunctive relief must issue for an APA violation. 174 F.3d at 1187. The Tenth Circuit, however, failed to consider the impact of § 702 on this conclusion.

Section 702 uses unequivocal language. The provision that creates a right to sue the United States for injunctive relief states: "Nothing herein (1) affects other limitations on judicial review or the power or duty of the court to dismiss any action or deny relief on any other appropriate legal or equitable ground." 5 U.S.C. § 702. This language in § 702 was added by amendment to the APA in 1976. The legislative history to that amendment explains:

All other than the law of sovereign immunity remain unchanged [by this amendment]. This intent is made clear by clause (1) of the third new sentence added to section 702: Nothing here (1) affects other limitations on judicial review or the power or duty of the court to

dismiss any action or deny relief on any other appropriate legal or equitable ground. *These grounds include, but are not limited to, the following: (1) extraordinary relief should not be granted because of the hardship to the defendant or the public ('balancing the equities')* . . .

H.R. Rep. 94–1656, 94th Cong., 2nd Sess. 1976, *10; 1976 U.S.C.C.A.N. 6121, 6131. Furthermore, interpreting the language of § 702, the D.C. Circuit has held that all forms of relief under the APA are discretionary: "all the basis for nonmonetary relief-including injunction, mandamus, and declaratory judgment-are discretionary." *Sanchez–Espinoza v. Reagan,* 770 F.2d 202, 207–08 (D.C.Cir.1985).

This Court reads the more specific language of § 702, expressly recognizing courts' discretion to balance the equities, to qualify rather than contradict the more general language of § 706. Because of the clear language of § 702, this Court can not hold that Congress has clearly and unequivocally limited this Court's discretion under the APA. While the Court need go no further than the plain text of these statutory provisions to come to that conclusion, both the legislative history of the 1976 amendment to the APA and the D.C. Circuit's holding in *Sanchez–Espinoza v. Reagan,* 770 F.2d at 207–08, further support this conclusion. Because § 702 of the APA explicitly states that a court retains equitable discretion, this Court can not hold that Congress has clearly and unequivocally limited that discretion under the APA.

## II. Remedy

In 2001, the Supreme Court clarified the scope of a court's equitable discretion to remedy a statutory violation. *Oakland Cannabis Buyers',* 532 U.S. at 497, 121 S.Ct. 1711. If, after examining a statute to determine whether Congress has restricted the traditional equitable discretion, a court concludes that discretion remains, the court can *not* exercise its discretion to provide no relief. "CONSEQUENTLY, WHEN a court of equity exercises its discretion, it may not consider the advantages and disadvantages of non-enforcement of the statute, but only the advantages and disadvantages of employing the extraordinary remedy of injunction over other available methods of enforcement." *Id.* at 498, 121 S.Ct. 1711 (*citing Weinberger,* 456 U.S. at 311, 102 S.Ct. 1798)(emphasis in original). The Court further explained, "[t]o the extent that the district court considers the public interest and conveniences of the parties, the court is limited to evaluating how such interest and conveniences are affected by the selection of an injunction over other enforcement mechanisms." *Id.* A court sitting in equity can not choose to grant no relief because "a court sitting in equity cannot ignore the judgment of Congress deliberately expressed in legislation. . . . A district court, cannot, for example, override Congress' policy choice, articulated in a statute, as to what behavior should be prohibited." *Id.* at 497, 121 S.Ct. 1711 (citation omitted).[2]

The trial court in the *Oakland Cannabis* case had issued an injunction pursuant to the Controlled Substances Act prohibiting the sale of marijuana for medicinal purposes. 532 U.S. at 488, 121 S.Ct. 1711. The Ninth Circuit reversed, recognizing a "medical necessity defense." *Id.* The Supreme Court reversed the Ninth Circuit, refusing to recognize such a defense. *Id.*

2. This holding is consistent with another case relied upon by plaintiff, *American Bioscience Inc. v. Thompson,* 269 F.3d 1077, 1084 (D.C.Cir.2001), in which the D.C. Circuit held that a party prevailing on an APA claim is "entitled to relief under that statute."

at 489—95, 121 S.Ct. 1711. The Supreme Court also disagreed with the Ninth Circuit's use of its broad equitable discretion to tailor an injunction to account for medical necessity, irrespective of whether such a legal defense existed. *Id.* at 495—99, 121 S.Ct. 1711. The Court announced the standard discussed above, and stated that the Ninth Circuit erred in the factors it considered in exercising its discretion. The Court held that it was error to consider evidence of harm to seriously ill individuals absent the use of marijuana, because "the balance has already been struck against a medical necessity exception." *Id.* at 499, 121 S.Ct. 1711.

■■■ Thus, prior to considering the balance of the equities in this case, the Court should determine the scope of the possible remedies available to be considered. Supreme Court precedent is clear that the range of potential remedies considered by a district court must include only remedies aimed at securing prompt compliance with the statute being violated by defendants. In *Weinberger,* after holding that Congress had not limited equitable discretion under the FWPCA, the Court then held: "Rather than requiring a district court to issue an injunction for any and all statutory violations, the FWPCA permits the district court to order that relief it considers *necessary to secure prompt compliance with the Act.* That relief can include, but is not limited to, an order of immediate cessation." 456 U.S. at 320, 102 S.Ct. 1798 (emphasis added); *see also Oakland Cannabis Buyers',* 532 U.S. at 497, 121 S.Ct. 1711. Regardless of the balance of equities at stake here and contrary to defen-

dant's assertions at oral argument, this Court can not decide to offer plaintiff no relief.

The facts of this case are such that an injunction halting all military activities on FDM is the only option that will ensure compliance with the APA and MBTA.[3] Significantly, by defendant's own admission, "[a]ll of the challenged military exercises [on FDM] could potentially wound or kill migratory birds." Defs' Supp. Mem. of 4/10/02 at 27. Furthermore, "[t]here is no further mitigation the U.S. could undertake, short of halting necessary training exercises altogether, that could guarantee that no migratory birds would be wounded or killed." *Id.* Finally, defense counsel represented to the Court at oral argument that defendants' military activities continue on FDM on a daily basis. Thus, by killing and harming migratory birds on a daily basis, defendants continue to violate the MBTA and the APA, and only an injunction halting all of those activities will suffice to ensure immediate compliance with those statutes.

Defendants could also theoretically comply with the MBTA and APA if they were able to obtain a valid permit from the Fish and Wildlife Service (FWS). Defendants have argued that this Court lacks the authority to order defendants to apply for a MBTA permit. However, the Supreme Court has twice recognized a District Court's authority to order the federal government to obtain an environmental permit, in *Oakland Cannabis Buyers',* 532 U.S. at 498 n. 9, 121 S.Ct. 1711, and *Weinberger,* 456 U.S. at 320, 102 S.Ct. 1798. In

---

3. Although only the APA's language and history were relevant to the question of whether Congress limited this Court's equitable discretion to refuse to issue an injunction, in exercising that discretion to determine the appropriate remedy for the statutory violation here, the Court should consider both the APA and the MBTA. The violation of the APA can not be remedied without addressing the violation of the MBTA. Whether or not a remedy is sufficient under the APA will therefore depend on whether it adequately addresses the MBTA violation.

*Weinberger,* the Supreme Court held that the District Court had the discretion to consider not issuing an immediate cessation injunction preventing the United States from issuing ordnance into the water, because other means of compliance with the statute, such as ordering the United States to obtain a permit, existed. 456 U.S. at 314–318, 102 S.Ct. 1798. In *Oakland Cannabis,* the Supreme Court favorably cited this language from *Weinberger* as an example of the appropriate consideration of other enforcement mechanisms. 532 U.S. at 498 n. 9, 121 S.Ct. 1711.

It is, unclear, however, whether ordering defendants to apply for a permit here will ensure compliance with the requirements of the APA and the MBTA. Two important factors guided the *Weinberger* Court in holding that it was within the trial court's discretion to not issue an immediate cessation order: the likelihood of issuance of a permit, and the lack of environmental harm caused by defendants actions. 456 U.S. at 320, 102 S.Ct. 1798. The Supreme Court specifically stated "[t]he District Court did not face a situation in which a permit would very likely not issue, and the requirements and objective of the statute therefore not be vindicated if discharges were permitted to continue. Should it become clear that no permit will be issued and that compliance with the FWPCA will not be forthcoming, the statutory scheme and purpose would require the court to reconsider the balance it has struck." 456 U.S. at 305, 102 S.Ct. 1798.

In contrast, in this case, the FWS has denied defendants' permit applications *at least twice.*[4] *See* Achitoff Dec., Ex. 17 (Bortner Letter of August 5, 1996). Defendants now represent to the Court that

they believe that the FWS is likely to issue such a permit. While it would be inappropriate and premature for this Court to pass judgment on the legality of any potential permit that could be issued to defendants for these activities, the Court does note that just as strongly as defendants have assured the Court that they will receive a permit, so too has plaintiff objected that any permit issued to defendants will violate the FWS' regulatory and statutory mandate. The fact that FWS has consistently denied permits to defendants for these activities in the past is very significant. The Court can not be at all confident that ordering defendants to apply for a permit will be sufficient to ensure compliance with the requirements of the APA and the MBTA.

Furthermore, the *Oakland Cannabis Buyers'* Court's discussion of the relevance of a medical necessity defense to the scope of available remedies is particularly relevant here. The Supreme Court held that in balancing the equities to determine which enforcement mechanism was appropriate it was *error* for the trial court to consider evidence of the "serious harm" to individuals with "serious medical conditions for whom the use of cannabis is necessary in order to treat or alleviate those conditions or their symptoms." *Id.* at 498–99, 121 S.Ct. 1711. Because the Controlled Substances Act struck a balance against such a necessity exception, the trial court could not even consider evidence of that harm. *Id.* "Because statutory prohibitions cover even those who have what could be termed a medical necessity, the Act precludes consideration of this evidence." *Id.* at 499, 121 S.Ct. 1711. Just as Congress decided not to recognize a medical necessity defense in the Con-

---

4. In further contrast to *Weinberger,* the environmental harm here is being caused by defendants on a daily basis.

trolled Substances Act, Congress decided not to recognize a national security necessity defense to the MBTA. This Court can not and will not read into the MBTA an exception that Congress has not included in the statute.

Defendants have failed to recognize the potential impact of this holding on this case. Because the MBTA's prohibitions include those who are acting by what could be termed a national security necessity, the Supreme Court's holding in *Oakland Cannabis* arguably *precludes* consideration of evidence of any harm to the military from issuing the injunction. The Supreme Court has arguably narrowed the scope of what the Court can consider in balancing the equities to exclude evidence of harm to defendants that will occur if training is halted.

■ Once again, regardless of the equities at issue in this case, the scope of this Court's discretion is limited to issuing "relief ... consider[ed] necessary to secure prompt compliance with the Act." *Weinberger*, 456 U.S. at 320, 102 S.Ct. 1798; *Oakland Cannabis Buyers'*, 532 U.S. at 498, 121 S.Ct. 1711. Because the *Oakland Cannabis Buyers* decision raises doubts as to the extent to which this Court can consider harms excluded by Congress from the interests served by a criminal statute, and because the FWS has repeatedly denied defendants' permit requests in the past, this Court is not of the opinion that an injunction ordering defendants to only obtain a permit will suffice to remedy the violations here.

Thus, the only option available that this Court can with any confidence say will ensure compliance with the mandates of the APA and the MBTA is ordering a halt to all military activities on FDM. As explained in *Oakland Cannabis Buyers'*, "[t]o the extent the district court considers the public interest and the conveniences of the parties, the court is limited to evaluating how such interest and conveniences are affected by the selection of an injunction over other enforcement mechanisms." 532 U.S. at 498, 121 S.Ct. 1711. Here, this Court is presented with one, and only one, viable option for enforcing the requirements of these statutes.

This Court of course recognizes the weight and importance of the United States' interest in using FDM for military training, particularly at this point in time. This Court is also very mindful of the public's interest in maintaining the readiness of our military and this Court's obligation to include the public interest when balancing the equities. *Railroad Comm'n. v. Pullman Co.*, 312 U.S. 496, 500, 61 S.Ct. 643, 85 L.Ed. 971 (1941) ("In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction."). However, regardless of the balance, and regardless of whether in another context this Court might conclude that the interests of defendants and the public outweigh the interests of plaintiff, this Court's discretion is limited by the facts of this case. There is only one viable option presented to this Court for enforcing these statutes.

However, because this Court recognizes the impact this injunction will have on the defendants' and the public's interests, rather than issue a permanent injunction, this Court will issue a preliminary injunction for 30 days. If during that time the circumstances of this case change, either by administrative or congressional action, this Court will promptly take appropriate action. At the end of that 30 day period, this Court will consider the entry of final judgment and a permanent injunction, if necessary.

## CONCLUSION

In light of this Court's Order of March 13, 2002 granting summary judgment for plaintiff, and for the foregoing reasons, the defendants are hereby

**ORDERED** to comply with § 706 of the Administrative Procedures Act and § 703 of the Migratory Bird Treaty Act; it is

**FURTHER ORDERED** that all military training exercises conducted by defendants on FDM that can potentially wound or kill migratory birds are immediately enjoined; it is

**FURTHER ORDERED** that this preliminary injunction will remain in effect for 30 days from the date of this Order; it is

**FURTHER ORDERED** that defendants shall immediately file an application with the FWS for an MBTA permit for their activities on FDM; it is

**FURTHER ORDERED** that this Court will hold a status hearing in this case on **May 10, 2002**, at **11 a.m.** in **Courtroom One**; it is

**FURTHER ORDERED** that in light of the technological difficulties at the last hearing, counsel for all parties shall appear in person at the status hearing; it is

**FURTHER ORDERED** that for reasons given in open court, defendants' oral motion for a stay of this injunction pending appeal is **DENIED**.

**IT IS SO ORDERED**.