**MELISSA INDUSTRIAL DEVELOPMENT CORPORATION and City of Melissa, Texas, Plaintiffs,**

v.

**NORTH COLLIN WATER SUPPLY CORPORATION and United States Department of Agriculture acting by and through Ann M. Veneman, Secretary of Agriculture, Defendants.**

No. 4:02–CV–345.

United States District Court,
E.D. Texas,
Sherman Division.

April 8, 2003.

Richard Mercer Abernathy, Abernathy, Roeder Boyd & Joplin, McKinney, TX, for Melissa Indus. Development Corp. and City of Melissa.

Ronald D. Stutes, Brown & Hofmeister LLP, Dallas, TX, for City of McKinney.

James Wallace Wilson, Rapier & Wilson, Allen, TX, for North Collin Water Supply Corp.

Ruth Harris Yeager, U.S. Attorney's Office, Tyler, TX, Christine Cole Biederman, U. S. Attorney's Office, Plano, TX, for Dept. of Agriculture.

## MEMORANDUM OPINION AND ORDER

DAVIS, District Judge.

Defendant United States Department of Agriculture (USDA) has filed a Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) (Docket No. 19). On March 26, 2003, the Court held a hearing on the USDA's Motion to Dismiss. Having considered the parties' submissions, argument of counsel, and the applicable law, the Court finds that the USDA's Motion to Dismiss should be **DENIED.**

## BACKGROUND

North Collin Water Supply Corporation ("NCWSC") is a non-profit corporation organized for the purpose of providing water utility services to an area within Collin County, Texas, as delineated in its Certificate of Convenience and Necessity ("CCN"). The NCWSC's CCN covers an area of North Collin County, Texas, including land within and adjacent to the incorporated area of the City of Melissa. The CCN covers a total estimated land area of 48,500 acres. Plaintiffs have competed with NCWSC by attempting to provide water services to areas within NCWSC's CCN. Plaintiffs are also holders and owners of membership interests in NCWSC.

The purpose of the loan/grant was to upgrade and improve its water supply system by increasing water delivery pressure to new and existing customers. In 2001, NCWSC applied for a $1,420,000 loan and a $850,000 grant (hereinafter "loan/grant") from the USDA through the federal government's rural water development program.[1] The purpose of the loan/grant was to upgrade and improve its water supply system by increasing water delivery pressure to new and existing customers. The USDA has approved NCWSC's application, but the loan/grant have not yet been funded.

Once the loan/grant is funded and NCWSC goes forward with the contemplated improvements, a federal law will be triggered which will generally protect NCWSC's service area from encroachment by any competitors for up to 40 years.[2]

---

[1] The Federal program under which this loan and grant are to be made is administered by the USDA, through the Texas State Director for Rural Development, on behalf of the Rural Utilities Service (RUS) pursuant to delegations of authority found at 7 C.F.R. §§ 2.17, 2.47, and 1900.2. The loan and grant program is authorized by Section 306 of the Consolidated Farm and Rural Development Act (CONACT), codified at 7 U.S.C. § 1926.

[2] Both the USDA and NCWSC would have to consent for a competitor to service NCWSC's area.

Section 306 of the CONACT, 7 U.S.C. § 1926, provides that neither the state nor any municipality may curtail or otherwise encroach upon areas being served by recipients of the federal loan and grant program.

On October 21, 2002, the Plaintiff Melissa Industrial Development Corporation and the City of Melissa filed their Original Complaint against the Defendants NCWSC and the USDA seeking injunctive relief, a Writ of Mandamus, and declaratory relief. Plaintiffs contend that NCWSC failed to comply with assorted notice, open records and open meetings provisions as mandated by the Texas Public Information and Texas Non–Profit Corporation Acts, by the Texas Government Code, and by NCWSC's own by-laws. Further, Plaintiffs allege that these failures to comply with state law also constitute failures to comply with federal statutes mandating that certain conditions be met prior to funding the loan and grant. Plaintiffs ask this Court, among other relief, to enjoin the USDA from funding its loan and grant commitment to NCWSC "until such time as the statutory prerequisites under Texas and federal law and Defendant NCWSC's by-laws have been satisfied." [3]

Specifically, Plaintiffs seek to compel the USDA to refrain from lending money to NCWSC pursuant to 7 U.S.C. § 1926 until such time as the statutory prerequisites under 7 U.S.C. § 1926(a)(3) and NCWSC's by-laws have been satisfied. Plaintiffs further request the issuance of a Writ of Mandamus instructing the USDA to not close the loan/grant until NCWSC has properly complied with its by-laws and Texas and federal law.

In the its Motion to Dismiss, the USDA argues that: (1) the government has not waived sovereign immunity; (2) this Court lacks subject matter jurisdiction; (3) Plaintiffs lack standing to sue; and (4) this case is not ripe. The Court will address each of these arguments in turn.

## STANDARD OF REVIEW

■■■ The standard of review for motions to dismiss under Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6) is the same. *See Benton v. United States,* 960 F.2d 19, 21 (5th Cir.1992). The moving party bears the burden of showing that "plaintiff can prove no set of facts consistent with the allegations in the complaint which would entitle it to relief." *Baton Rouge Bldg. & Constr. Trades Council AFL–CIO v. Jacobs Constructors, Inc.,* 804 F.2d 879, 881 (5th. Cir.1986). The court "must accept all well-pleaded factual allegations in the light most favorable to the non-moving party." *American Waste & Pollution Control Co. v. Browning–Ferris Inc.,* 949 F.2d 1384, 1386 (5th Cir.1991). A court's ultimate conclusion that a case should be dismissed may rest "on any one of three separate bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Barrera–Montenegro v. U.S.,* 74 F.3d 657, 659 (5th Cir.1996) (citations omitted). Conclusory allegations or legal conclusions however will not suffice to defeat a motion to dismiss. *See Fernandez–Montes v. Allied Pilots Ass'n,* 987 F.2d 278, 284 (5th Cir.1993).

## WAIVER OF SOVEREIGN IMMUNITY

■■■ The USDA argues that sovereign immunity has not been waived. The principle of sovereign immunity protects the

---

**3.** The City of McKinney has intervened also seeking injunctive and declaratory relief, but only against NCWSC.

federal government from suit except insofar as that immunity is waived. A waiver will not be implied and must be unequivocally expressed in statutory text. *See Lane v. Peña,* 518 U.S. 187, 192, 116 S.Ct. 2092, 135 L.Ed.2d 486 (1996). Courts should construe statutes against waiver unless Congress has explicitly provided for it. *See, e.g., Peña v. United States,* 157 F.3d 984, 986 (5th Cir.1998). "Consequently, no suit may be maintained against the United States unless the suit is brought in exact compliance with the terms of a statute under which the sovereign has consented to be sued." *Koehler v. United States,* 153 F.3d 263, 265 (5th Cir.1998) (citing *Soriano v. United States,* 352 U.S. 270, 276, 77 S.Ct. 269, 1 L.Ed.2d 306 (1957)). The burden is on the Plaintiffs to show such consent, because they are the parties asserting federal jurisdiction. *See Stockman v. Federal Election Comm'n,* 138 F.3d 144, 151 (5th Cir.1998).

### *The Administrative Procedure Act*

The USDA contends that Plaintiffs do not complain of a final agency action and Plaintiffs have failed to exhaust their administrative remedies under the Administrative Procedure Act (APA).[4] The APA waives sovereign immunity for non-monetary claims against government agencies. *See Rothe Development Corp. v. U.S. Dept. of Defense,* 194 F.3d 622, 624 (5th Cir. 1999). The APA provides, in relevant part, that a person suffering a legal wrong or adversely affected or aggrieved by agency action within the meaning of a relevant statute (7 U.S.C. § 1926 in this case) is entitled to judicial review. 5 U.S.C. § 702. "Agency action" is defined by the APA as "the whole or part of any agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." 5 U.S.C. § 551(13).

#### *i. Final Agency Action*

When, as in this case, the relevant statutory provisions do not directly provide for judicial review, the APA authorizes judicial review if the action complained of is a "final agency action." 5 U.S.C. § 704; *see also American Airlines, Inc. v. Herman,* 176 F.3d 283, 287 (5th Cir.1999). If there is no "final agency action," a court lacks subject matter jurisdiction. *Veldhoen v. United States Coast Guard,* 35 F.3d 222, 225 (5th Cir.1994).

■ The APA's finality requirement is "flexible" and "pragmatic." *Abbott Laboratories v. Gardner,* 387 U.S. 136, 149–50, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967). In order for an agency action to be "final," the following two conditions must be met: (1) the action must mark the "consummation" of the agency's decision-making process, and (2) the action must be one by which "rights or obligations have been determined" or from which "legal consequences will flow." *American Airlines, Inc.,* 176 F.3d at 287–88; *Veldhoen,* 35 F.3d at 225 (a final agency action is one that "imposes an obligation, denies a right or fixes a legal relationship").

■ The Court finds that the USDA's approval of NCWSC's loan/grant application is a "final agency action." There is no further approval process and there is no further agency review or appeal. Under the relevant statutory scheme there is nothing left for NCWSC to do but receive and spend the money. *See* 7 C.F.R. § 1780.36. Further, the loan/grant approval has imposed an obligation between the USDA and NCWSC and fixes the parties' legal relationship and significant legal consequences flow from this loan/grant approval. Accordingly, this is a final agency

---

4. At oral argument, counsel for the USDA conceded that Plaintiffs were not required to exhaust any administrative remedies under the APA.

action subject to this Court's review under the APA.

### ii. Presumptively Unreviewable

The USDA further argues that in certain circumstances, such as an agency's action not to exercise investigative or enforcement powers or rule-making authority, the decision is presumptively unreviewable. *See* 5 U.S.C. § 701(a)(2); *see also Heckler v. Chaney*, 470 U.S. 821, 105 S.Ct. 1649, 84 L.Ed.2d 714 (1985); *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971).

The APA presumptively entitles "[a] person suffering legal wrong because of agency action ... to judicial review thereof," 5 U.S.C. § 702, so long as such action is final within the meaning of 5 U.S.C. § 704. "[J]udicial review of a final agency action by an aggrieved person will not be cut off unless there is persuasive reason to believe that such was the purpose of Congress." *Bowen v. Michigan Academy of Family Physicians*, 476 U.S. 667, 670, 106 S.Ct. 2133, 90 L.Ed.2d 623 (1986). However, the presumption of reviewability is not absolute or without exception. The provisions of the APA are applicable "except to the extent that—(1) statutes preclude judicial review; or (2) agency action is committed to agency discretion by law." 5 U.S.C. § 701(a). In this case, Congress has not expressly prohibited review of the USDA's determination. Therefore, it is with the second exception that this Court is concerned.

■ The exception to judicial review for action "committed to agency discretion by law" is narrow. *Citizens to Preserve Overton Park, Inc.*, 401 U.S. at 410, 91 S.Ct. 814. The APA's legislative history reveals that subsection (a)(2) applies only where "statutes are drawn in such broad terms that in a given case there is no law to apply." S.Rep. No. 752, 79th Cong., 1st Sess. 26 (1945). While this statement furnishes little assistance to courts attempting to apply subsection (a)(2), the Supreme Court in *Heckler*, elaborated on the exception's meaning:

> [E]ven where Congress has not affirmatively precluded review, review is not to be had if the statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion. In such a case, the statute ("law") can be taken to have "committed" the decisionmaking to the agency's judgment absolutely. This construction avoids conflict with the "abuse of discretion" standard of review in § 706—if no judicially manageable standards are available for judging how and when an agency should exercise its discretion, then it is impossible to evaluate agency action for "abuse of discretion."

470 U.S. at 830, 105 S.Ct. 1649. Thus, only if Congress "has indicated an intent to circumscribe agency enforcement discretion, and has provided meaningful standards for defining the limits of that discretion" is there "law to apply" under § 701(a)(2). *Heckler*, 470 U.S. at 834, 105 S.Ct. 1649.

In *Heckler*, the Court differentiated between agency action and inaction, and concluded that under § 701(a)(2) agency refusals to institute investigative or enforcement proceedings were unreviewable in the absence of a contrary congressional intent. *Heckler*, 470 U.S. at 838, 105 S.Ct. 1649. Nevertheless, "when an agency does act to enforce, that action itself provides a focus for judicial review, inasmuch as the agency must have exercised its power in some manner. The action at least can be reviewed to determine whether the agency exceeded its statutory power." *Id.* at 832.

■ The instant case does not involve the USDA's refusal to take the requested information. Instead, this case "involve[s] an affirmative act of approval under a statute that sets clear guidelines for determining when such approval should be given." *Heckler*, 470 U.S. at 830, 105 S.Ct. 1649. The CONACT, 7 U.S.C. § 1926 and its accompanying regulations provide that the USDA may only approve water and waste disposal system loans within certain guidelines: (1) the applicant (NCWSC) must have the legal authority to obtain the loan;[5] (2) the applicant must service a "rural area," which is defined as an area of less than 10,000 inhabitants;[6] and (3) the applicant cannot be able to finance the proposed project from its own resources or through commercial credit at reasonable rates and terms.[7] Further, pursuant to statute (31 U.S.C. § 6506(a-e)), regulations (7 C.F.R. § 1780.1(h)), and executive orders (12372, 47 FR 30959 and 12416, 48 FR 15587), the USDA is required prior to approving the loan to "assure maximum support to the State strategy for rural development" and "make efforts to accommodate State and local elected officials' concerns with proposed Federal financial assistance and direct Federal development that are communicated through the designated State process."

The Plaintiffs complain that the USDA violated the clear mandatory guidelines at issue by approving the loan to NCWSC despite the fact that NCWSC was not eligible for the loan and the loan was contrary to the State strategy for development in Collin County.[8] The language of

the relevant enabling statutes does not permit voluntary departure form the statutory requirements through the exercise of discretion by the agency. As such, the statutes provide the court "with law to apply." Finally, the USDA's failure to follow its own regulations likewise may be challenged under the APA. *See Sampson v. Murray*, 415 U.S. 61, 94 S.Ct. 937, 39 L.Ed.2d 166 (1974) (failure of agency to follow regulations in discharging employee reviewable); *Service v. Dulles*, 354 U.S. 363, 77 S.Ct. 1152, 1 L.Ed.2d 1403, (1957) (federal courts may review agency action to ensure its own regulations have been followed). Accordingly, sovereign immunity has been waived.

**SUBJECT MATTER JURISDICTION**

■ In their Second Amended Complaint, Plaintiffs have asserted three bases for jurisdiction: 28 U.S.C. § 1331 (federal question); 28 U.S.C. § 1361 (federal mandamus); and 5 U.S.C. § 702 (the APA). The USDA argues that this Court does not have subject matter jurisdiction. The Court disagrees. The APA provides subject matter jurisdiction in conjunction with 28 U.S.C. § 1331 over questions involving final agency action. *See Chrysler Corp. v. Brown*, 441 U.S. 281, 317 n. 47, 99 S.Ct. 1705, 60 L.Ed.2d 208 (1979) ("Jurisdiction to review agency action under the APA is found in 28 U.S.C. § 1331."); *Stockman*, 138 F.3d at 152 (§ 702 of the APA creates a cause of action for which jurisdiction exists under 28 U.S.C. § 1331). Accordingly, this Court has subject matter jurisdiction.

---

5. 7 C.F.R. § 1780.7(e).

6. 7 C.F.R. § 1780.7(b) & (3); 7 U.S.C. § 1926(a)(7).

7. 7 C.F.R. § 1780.7(d); *Id.* § 1780.33(d).

8. Plaintiffs have attempted to dissolve NCWSC by challenging its CNN before the

Texas Commission on Environmental Quality ("TCEQ"), the state regulatory agency charged with overseeing water quality and service. Plaintiffs have also filed applications seeking to be permitted to provide water service to areas within NCWSC's service area. These matters are currently pending before a state Administrative Law Judge.

## STANDING

The USDA argues that Plaintiffs lack standing to bring the instant action because they fail to meet the case or controversy requirement of Article III of the United States Constitution. Article III of the Constitution restricts the "judicial power" of the United States to the resolution of "cases" and "controversies." *See Valley Forge Christian College v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 471, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982). Encompassed within this restriction is the requirement that "a litigant have 'standing' to challenge the action sought to be adjudicated in the lawsuit." *Id.* Standing has constitutional and prudential components, both of which must be satisfied before a litigant may seek redress in the federal courts. *Id.*

### *Constitutional Requirements*

■ The case or controversy requirement is the "'irreducible constitutional minimum' of standing." *Bennett v. Spear*, 520 U.S. 154, 162, 117 S.Ct. 1154, 137 L.Ed.2d 281 (1997). To satisfy it requires: (1) that the plaintiff have suffered an "injury in fact"—an invasion of a judicially cognizable interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) that there be a causal connection between the injury and the conduct complained of—the injury must be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court; and (3) that it be likely, as opposed to merely specu-

lative, that the injury will be redressed by a favorable decision. *Id.* at 167, 117 S.Ct. 1154. The party invoking federal jurisdiction—here, the Plaintiffs—"bears the burden of establishing these elements," and "each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992).

■ In this case, Plaintiffs meet the constitutional standing requirements. First, the recent annexation activities of the City of Melissa for the subdivisions of Hunter's Ridge, North Creek, and Liberty, as well as an earlier annexation of Berry Farms which, in turn, required the provision of water services to this area demonstrates that the City of Melissa is competing for the provision of water service to areas within NCWSC's CCN. Thus, as a competitor of NCWSC, Plaintiffs have a clear interest in making sure their competitor has the proper authority to apply for a loan/grant that essentially shuts Plaintiffs out of the water market for four decades. Further, in January 2002, to discharge its statutory responsibility under Section 43.056, Texas Local Government Code, the City of Melissa entered into a Facilities Agreement with the developer of Hunter's Ridge to provide water service.[9] If the USDA loan/grant is implemented, the statutory prohibition under 7 U.S.C. § 1926(b) becomes effective and the Facilities Agreement would be abrogated. *See North Alamo Water Supply Corp. v. City of San Juan, Texas*, 90 F.3d 910, 913–15 (5th

---

9. As a result of this Agreement and the City's ongoing provision of water services to the Berry Farms subdivision, which has been in place since 1998, NCWSC filed its Complaint and Petition for Temporary and Permanent Cease and Desist Orders against the City of Melissa with the TCEQ. The Complaint was based on the alleged incursion of the City of

Melissa into an area for which NCWSC has a CCN for the provision of water service. An administrative hearing was held and resulted in a denial of NCWSC's relief requested. This determination by the administrative judge has been appealed to the 250th Judicial District Court of Travis County, Texas and is still pending.

Cir.1996). In addition, as members of the NCWSC, Plaintiffs have an interest in assuring that they are not subjected to an unnecessary indebtedness to the USDA without proper membership authorization. These are immediate injuries caused by the loan relationship between the USDA and NCWSC. A decision favorable to the Plaintiffs will undoubtedly redress its injuries. If this Court finds in favor of Plaintiffs, the USDA will not be able to implement the loan/grant unless and until all laws are complied with.

### Prudential Requirement

■ In addition to the Article III standing requirements, federal courts have developed prudential standing considerations "that are part of judicial self-government." *Lujan*, 504 U.S. at 560, 112 S.Ct. 2130. Courts have interpreted § 10(a) of the APA to impose a prudential standing requirement in addition to the requirement, imposed by Article III of the Constitution. *See, e.g., Ass'n of Data Processing Service Organizations, Inc. v. Camp*, 397 U.S. 150, 152, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970). For a plaintiff to have prudential standing under the APA, "the interest sought to be protected by the complainant [must be] arguably within the zone of interests to be protected or regulated by the statute ... in question." *Id.* at 153, 90 S.Ct. 827. The test is not meant to be demanding, in particular, there need be no indication of congressional purpose to benefit the would-be plaintiff. In light of the generous nature of the zone of interests test, the interest a plaintiff seeks to vindicate need only have "a plausible relationship to the policies underlying the statute." *Clarke*, 479 U.S. at 403, 107 S.Ct. 750.

In determining whether a plaintiff's interests are among those "arguably to be protected" by the relevant statute, the analysis focuses on "who in practice can be expected to police the interests that the statute protects." *Mova Pharmaceutical Corp. v. Shalala*, 140 F.3d 1060, 1075 (D.C.Cir.1998). Numerous courts have found that competitors of regulated entities have standing to challenge/enforce regulations—one's status as a competitor satisfies the zone of interests test. *See, e.g., Nat'l Credit Union Admin.*, 522 U.S. at 495, 118 S.Ct. 927("As competitors of national banks, travel agents and data processors had that [arguable] interest, and that interest had been affected by the Comptroller's interpretations opening their markets to national banks."); *Envirocare of Utah, Inc. v. Nuclear Regulatory Comm'n*, 194 F.3d 72, 75 (D.C.Cir.1999) ("[plaintiff's] status as a competitor satisfies the zone of interests test for standing"); *Sault Ste. Marie Tribe of Chippewa Indians v. United States*, 288 F.3d 910, 914 (6th Cir.2002) ("the zone of interests concept is sufficiently broad to embrace the interests of an actual or potential competitor").

■ According to the zone of interest test, the first step is to identify the interests protected by the CONACT, 7 U.S.C. § 1926. As part of this Act, Congress authorized the Secretary of Agriculture to make or insure loans to nonprofit water service associations, like NCWSC, for "the conservation, development, use, and control of water." 7 U.S.C. § 1926(a). Since 1961, this program has provided water-infrastructure loans to nonprofit water associations who cannot receive financing through conventional commercial lending for the benefit of financially needy rural areas and small towns. *See* 7 C.F.R. § 1780.2 (purpose of Act is to provide loan and grant funds for water and waste projects serving "the most financial needy communities"); 7 C.F.R. § 1780.7(d) (requiring that the proposed project cannot be financed through conventional commercial lending); *see also* Note, *Water Associ-*

ations and Federal Protection under 7 U.S.C. § 1926(b): A Proposal to Repeal Monopoly Status, 80 TEX. L.REV. 155, 156 (2001). Because only the most financially unstable water providers are eligible for these loans, the legislative history of Section 1926(b) reveals that Congress intended to protect these rural water districts from competition. *See Sequoyah County Rural Water District No. 7 v. Town of Muldrow,* 191 F.3d 1192, 1196 (10th Cir. 1999). In addition, the preemption of competition for 40 years was intended "to provide greater security for the federal loans made under the program." *Id.* Further, the intent of the program is to "assure maximum support to the State strategy for rural development." 7 C.F.R. § 1780.1(a).

In light of the general policies and interest affected by this Act, Plaintiffs have standing to police/enforce the statute's regulations. As stated above, Plaintiffs are competitors for water services with NCWSC, which is an entity regulated by Section 1926, and as such, Plaintiffs have a zone of interest in the proprietary of the government's approval of the loan/grant. As water providers, the Plaintiffs have an interest in ensuring that only a "financially needy" competitive water supplier is able to capture their potential customers and prevent city expansion for 40 years. Thus, Plaintiffs satisfy the prudential "zone of interest" requirement.

## RIPENESS

 The Court turns now to the USDA's argument that this case is not ripe for review. The USDA contends that Plaintiffs' allegations of threatened injury are speculative. In considering whether issues are ripe for judicial resolution, the court must evaluate the "fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Abbott Laboratories,* 387 U.S. at 149, 87 S.Ct. 1507. Four criteria are relevant to this determination:

(1) whether the issues presented are purely legal;

(2) whether the challenged agency action constitutes "final agency action;"

(3) whether the challenged agency action has or will have a direct and immediate impact on the petitioner; and

(4) whether resolution of the issues will foster, rather than impede, effective enforcement and administration by the agency.

*Texas v. United States Dept. of Energy,* 764 F.2d 278 (5th Cir.1985). However, where the plaintiff challenges an agency action, ripeness turns on whether there has been a "final agency action" within the meaning of APA § 704. *See e.g., Natural Resources Defense Council, Inc. v. Thomas,* 845 F.2d 1088, 1091 (D.C.Cir.1988) ("[t]he questions of ripeness and final agency action are inextricably intertwined"); *Media General Operations, Inc. v. Herman,* 152 F.Supp.2d 1368, 1373 (S.D.Ga.2001). In essence, "disagreements over final, specific agency actions are ripe." *Sierra Club v. Peterson,* 185 F.3d 349, 362 n. 16 (5th Cir.1999). Here, as previously stated, the USDA's action in approving the loan/grant is a final agency action under the APA. Accordingly, this case is ripe for the Court's review.

## CONCLUSION

For the foregoing reasons, the Court finds that the USDA's Motion to Dismiss should be **DENIED.**

**IT IS SO ORDERED.**